IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0551-10





WILLIAM THOMAS LEONARD, Appellant 



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


TARRANT COUNTY





 Meyers, J., delivered the opinion of the Court in which Keller, P.J.,
and Keasler, Hervey, and Alcala, JJ., joined. Hervey, J., filed a concurring
opinion in which Keller, P.J., and Keasler, J., joined. Cochran, J., filed a
dissenting opinion in which Price, Womack, and Johnson, JJ., joined. 


O P I N I O N 
 

 Appellant, William Thomas Leonard, pleaded guilty to injury to a child and
received five years' deferred adjudication and a $750 fine. The conditions of his
community supervision included sex offender evaluation and counseling, and required
that he submit to, and show no deception on, polygraph exams. After a hearing on the
motion to adjudicate, the trial court found that Appellant had violated the terms of his
community supervision; he was adjudicated guilty and sentenced to seven years'
confinement. He appealed. The court of appeals reversed the judgment of the trial court,
holding that the trial court abused its discretion by considering evidence of Appellant's
failed polygraph exams when determining whether to revoke his community supervision. 
Leonard v. State, 315 S.W.3d 578 (Tex. Crim. App. 2010). We granted the State's
petition for discretionary review to consider whether the results of polygraph exams may
be used for such purposes. We will reverse the court of appeals.

FACTS

 Appellant was indicted for aggravated sexual assault. He agreed to plead guilty to
injury to a child and was placed on deferred-adjudication community supervision. 
Appellant also agreed to the conditions of community supervision, including that he
complete sex offender evaluation and treatment and submit to polygraph exams, on which
he was required to show no deception. The State filed a motion to proceed to
adjudication, alleging that Appellant had been unsuccessfully discharged from treatment,
failed to make satisfactory progress in treatment, failed to pass polygraph exams, and
failed to pay fines. At the adjudication hearing, the State waived the failed polygraph and
failure to pay fines allegations. Appellant pleaded not true to the allegations of being
unsuccessfully discharged and to not making satisfactory progress in treatment. Over
Appellant's proper objection, the State called the sex offender therapist who had been
treating Appellant, psychotherapist George Michael Strain. Strain testified that Appellant
was discharged from treatment for failing five polygraphs. Strain further testified that the
use of polygraph testing is a common part of sex offender treatment, and that test results
are reasonably relied upon by experts in the field of sex offender treatment. Strain
testified that the five failed polygraphs led him to feel that Appellant was not being
honest with him and caused him to be concerned about the community's safety. Finally,
Strain testified that he had no other concerns about Appellant's treatment and that the five
failed polygraphs were the only basis for Appellant's discharge from treatment. The trial
court found true the allegation that Appellant was unsuccessfully discharged from sex
offender treatment and found Appellant guilty of injury to a child. He was sentenced to
seven years' confinement.

 Appellant appealed, claiming that the trial court erred in considering his polygraph 
results. The court of appeals agreed, holding that polygraph results were inadmissible for
all purposes, and reversed the trial court's adjudication of guilt. The State filed a petition
for discretionary review raising the following five grounds: 

 1. Did the Court of Appeals err in concluding that, in adjudication
proceedings, a sex offender treatment provider was not permitted to testify
to the results of polygraph examinations conducted as part of sex offender
treatment, which were a condition of probation, and were admitted as a
"fact or data" pursuant to Tex. R. Evid. 703 & 705(a) to support his expert's
opinion as to why Appellant was terminated from the mandated sex
offender treatment program?

 

 2. Did the Court of Appeals err in concluding this Court's holding, "that the
existence and results of a polygraph examination are inadmissible for all
purposes," applies to situations under Tex. R. Evid. 703 & 705(a), when an
expert, in an adjudication proceeding, considers those results as a basis for
rendering an expert opinion as to why a probationer was terminated from a
court ordered sex offender treatment program?

 

 3. Did the Court of Appeals err in ruling that this Court's holding in
Tennard v. State, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990), and its
progeny takes precedence over Tex. R. Evid. 703 & 705(a) in an
adjudication proceeding?


 4. Did the Court of Appeals err in not holding that Tex. R. Evid. 703 &
705(a) take precedence over Tennard v. State, 802 S.W.2d 678, 683 (Tex.
Crim. App. 1990) and its progeny?

 

 5. Did the Court of Appeals err in holding that polygraph results are always
inadmissible notwithstanding a valid condition of community supervision
required that the Appellant submit to and show no deception on a polygraph
examination and other diagnostic tests or evaluations as directed by the
court or supervision officer?


COURT OF APPEALS

 Citing Tennard v. State, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990), the court of
appeals concluded that "Texas law is clear that the existence and results of a polygraph
examination are inadmissible for all purposes." Leonard, 315 S.W.3d 578, 580. The
court noted that polygraph exams are regularly imposed as a condition of community
supervision for sex offenders, but the results of such exams are inadmissible due to their
lack of reliability. Id. at 580, citing Romero v. State, 493 S.W.2d 206 (Tex. Crim. App.
1973). The court said that the ban on polygraph evidence is comprehensive and applies
even to revocation proceedings. Leonard, 315 S.W.3d 578, 580, citing Nesbit v. State,
227 S.W.3d 64, 66 n. 4 (Tex. Crim. App. 2007). As a result, the court of appeals
determined that the trial court did not have the discretion to consider the test results under
Rule 703. (1) And, because the test results were the sole basis for Appellant's discharge
from treatment, the court of appeals called the revocation a "trial by polygraph." The
court of appeals maintained that a trial court can still impose polygraph exams as a
condition of community supervision and can revoke community supervision for refusing
or failing to take a court-ordered polygraph. Leonard, 315 S.W.3d at 581. The court of
appeals decided that the trial court abused its discretion by considering the evidence of
failed polygraph exams and by revoking community supervision. Id.

ARGUMENTS OF THE PARTIES

 The State argues that evidence regarding failed polygraph exams was admissible
for two reasons: first, as a basis of the expert's opinion that Appellant should be
discharged from the sex offender treatment program as a risk and danger to the
community; and second, because it was a condition of Appellant's community
supervision that he show "no deception" on polygraph exams. If the results of polygraph
testing were inadmissible, the State reasons that the condition would be a nullity. 

 The State says evidence of failed polygraphs should be admissible in this case
under Rules of Evidence 702, 703, and 705. Rule 702 allows an expert witness to testify
as to his opinion. Under Rule 705(b), a party can question the expert about the underlying
facts or data upon which the opinion is based, and Rule 703 specifies that if the facts or
data used to form the opinion are reasonably relied upon by experts in the field, the facts
or data need not be admissible in evidence. The State says, "The rule specifically notes
that the facts on which an expert bases his opinion need not be admissible in evidence." 
Strain was qualified as an expert in the field of sex offender treatment; he testified that
polygraph exams are commonly used in sex offender treatment and are reasonably relied
upon by experts in the field in forming opinions about whether a patient is complying
with the treatment program. The State argues that Appellant was not discharged from
treatment for failing polygraphs, rather he was terminated because he was not complying
with the program and Strain's expert opinion was that Appellant was not disclosing
information and was not being honest, which could put other children at risk. The State
concludes that, "While polygraph results are inadmissible, it was permissible for Mr.
Strain to utilize them as a basis to form an opinion that Appellant should be discharged
from the sex offender program."

 The State also asserts that polygraph exams were a reasonable condition of
community supervision. Code of Criminal Procedure article 42.12, section 11, allows a
trial judge to impose reasonable conditions such as those that are related to the crime,
provide treatment for the accused, deter the accused from future crimes, and protect the
public. Polygraph exams have been determined to be a reasonable condition of
community supervision and probation. In order for polygraph exams to maintain their
value for treatment, rehabilitation, and deterrence, it is not unreasonable for a trial court
to expect a defendant to be truthful. Therefore, it was reasonable for the trial court to
include a condition that Appellant show no deception on the polygraph exams. Since "no
deception" polygraph exams are a valid condition of community supervision, the results
should be admissible in revocation hearings. The State cites cases from other
jurisdictions where results of polygraph exams are admissible in revocation proceedings. 
The State says that "if the condition was valid, then evidence establishing its violations
should be admissible."

 Appellant objects to the creation of an exception to Tennard's prohibition against
the use of polygraph exams in criminal proceedings. Even when the State and defense
agree to admissibility, results are still excluded. Tennard did not exempt probation-
revocation hearings, rather it said polygraph exams were inadmissible "for all purposes,"
which is a straight-forward bar to the use of such evidence. Appellant states that it would
not be logical or consistent to bar polygraph results from juries but allow judges to
consider the evidence. Appellant notes concerns about the reliability and persuasiveness
of polygraph results and claims that the trial court was unduly persuaded of Appellant's
non-compliance with the conditions of probation based solely upon polygraph results. 
The trial court drew a distinction between admitting polygraph results to show
truthfulness and considering the results as a basis for an expert opinion as to whether
Appellant poses a risk to the community. Appellant says there is no difference because
the polygraph technology is scientifically unreliable and should not be considered
persuasive by a trier of fact. Appellant says polygraph results can be used as an
investigative or therapeutic tool, but should continue to be excluded for all purposes in
criminal proceedings. He argues that it was reversible error for the trial court to consider
his failed polygraph exams. Appellant admits that polygraph exams can still be a
condition of community supervision and are still useful to "facilitate confessions, lead to
additional evidence, both inculpatory and exculpatory, encourage pleas, and assist defense
lawyers in ferreting out facts and encouraging candor on the part of their oft-times less
than candid clients." Therefore, Appellant says it is groundless for the State to argue that,
if results are not admissible, then the condition is invalid. Appellant says the State's
position is that conditions of probation should supersede the well-established prohibition
against the use of polygraph results in criminal proceedings, which would result in
probation offices having the ultimate authority on what is admissible.

ADJUDICATION HEARING

 At the hearing, the defense filed a motion in limine seeking to exclude the
polygraph evidence. The court denied the motion stating, "While I understand the
polygraph itself, the results may not be admissible to prove that a person is or is not
telling the truth, I think the fact that someone is taking their polygraphs and their results
could be the basis of an expert's opinion." The defense disagreed, saying "I don't believe
the results of the polygraph would be admissible for purposes of this Court making a
determination as to whether a probationer should be adjudicated or revoked."

 The trial court acknowledged that this Court has said that polygraph results are
inadmissible before a jury and asked the defense if there was a case saying that a judge
cannot consider polygraph results as the basis of an expert's opinion in a revocation
hearing. The defense had no such case, but argued that polygraph exams are "per se
inadmissible in our criminal courts." 

 The court also asked if the defense thought it would be better for the expert to just
say "I discharged him" without giving any reasons to the court, and for the court to
adjudicate guilt because he was discharged even though no basis was given for the
discharge. The trial judge said that "discharge is a violation of his probation, and if it's
proved to me by a preponderance that your client was discharged, the Court has the
ability, as you well know, to revoke his probation and send him to prison. Now, we can
either explore the reasons for that or we cannot." The court concluded that even if the
evidence was generally inadmissible, it was admissible as the basis of an expert's opinion.

 The Court fully understands the general inadmissibility of polygraphs;
however, the Court feels that there is a distinction between admitting
polygraphs outright to show that someone did or did not tell the truth and
using them-considering them as the basis of an expert opinion as to whether
someone poses a danger and a risk to this community, which is the Court's
understanding of what the policy consideration at issue in this case is, is
secret keeping and whether it can and should be allowed.

The court allowed Strain to testify. Strain said that he was concerned about whether
Appellant was telling the truth, and his opinion was that Appellant was not being
completely honest with him. The defense asked Strain if his opinion "rests entirely on the
failure of the polygraphs" and he answered, "Yes, it does."

CASELAW

 In Romero v. State, we held that polygraph results should not be received into
evidence even if there had been a prior agreement or stipulation because "such stipulation
does nothing to enhance the reliability of such evidence when offered by either side on
the issue of the guilt or innocence of the accused." 493 S.W.2d at 213. Romero involved
a jury trial in which the trial court failed to give an instruction to the jury that the
polygraph evidence was not direct evidence of guilt, but evidence that tends to indicate
only whether the subject was telling the truth when tested.

 We later addressed whether a party could cross-examine a witness about the results
of a polygraph exam that were referred to by another witness. See Nethery v. State, 692
S.W.2d 686 (Tex. Crim. App. 1985). We stated that the witness's "unwittingly-made
remark about a polygraph does not mean that defense counsel, when examining a
different witness, can ask that witness about the results of the polygraph. The testimony
is not admissible and we have long held that to be the case." Id. at 700. Like Romero, the
Nethery trial was before a jury.

 In another jury trial, Tennard v. State, 802 S.W.2d 678, the original suspect in the
case had implicated the defendant. During the arresting officer's testimony, the defense
asked whether he believed statements made by the previous suspect. The officer
responded that he believed the statements because the suspect had taken and passed a
polygraph exam. Following Nethery, we stated that "The existence and results of a
polygraph examination are inadmissible for all purposes." However, because the witness
whose polygraph results were revealed to the jury was neither the sole witness nor even a
crucial witness, we held that the error did not contribute to the verdict or punishment. 
Tennard, 802 S.W.2d at 684.

 The court of appeals relied on Nesbit, 227 S.W.3d 64, for the proposition that
polygraph results are not admissible in revocation hearings. In Nesbit, the State filed a
motion to revoke the appellant's probation based in part on an entry in his probation file
that he had failed a sex offender polygraph test. While we did state in a footnote that
"neither the results of a polygraph test nor the 'fact' of failing a polygraph test are
admissible in a Texas criminal proceeding," the issue in Nesbit was the timing of the
filing of the motion to revoke, not the use of polygraph results. 227 S.W.3d at 66 n.4
(citing Nethery, 692 S.W.2d at 700).

ANALYSIS

Condition of Community Supervision

 When a defendant is placed on community supervision, Code of Criminal
Procedure article 42.12, section 11(a), allows a judge to "impose any reasonable condition
that is designed to protect or restore the community, protect or restore the victim, or
punish, rehabilitate, or reform the defendant." For sex offenders, section 11(i) specifies
that conditions may include supervision according to the offense-specific standards of
practice adopted by the Council on Sex Offender Treatment, which includes use of
polygraph exams. (2) Polygraph exams serve to establish treatment progress, to determine
honesty and openness to treatment, to monitor compliance with the treatment program,
and to deter and prohibit similar conduct while in treatment. (3)
 Here, the polygraph exams
taken by Appellant were used only for treatment purposes. Because he showed deception
on five of the exams, he was discharged from the treatment program; and, due to his
unsuccessful completion of the treatment program, his community supervision was
revoked. Thus, while the polygraph results may have been used as "evidence" in the
revocation hearing, it was as evidence only that Appellant did not comply with or
progress in the treatment program and not as evidence of guilt of the original offense. 

 We note that we have held that an appellant may not complain on appeal about a
condition of community supervision to which he agreed. Speth v. State, 6 S.W.3d 530
(Tex. Crim. App. 1999). We stated,

 An award of community supervision is not a right, but a contractual
privilege, and conditions thereof are terms of the contract entered into
between the trial court and the defendant. Therefore, conditions not
objected to are affirmatively accepted as terms of the contract. Thus, by
entering into the contractual relationship without objection, a defendant
affirmatively waives any rights encroached upon by the terms of the
contract. 

Id. at 534. However, here, Appellant did not object to the requirement that he take and
pass polygraph exams as a condition of his community supervision and even agreed that
taking polygraph exams was a reasonable condition. 

Adjudication Hearings

 We have not directly considered whether polygraph results are admissible in a
community-supervision revocation hearing. A revocation hearing is an administrative
proceeding and is neither a criminal nor a civil trial. See Cobb v. State, 851 S.W.2d 871,
873 (Tex. Crim. App. 1993). Texas Code of Criminal Procedure article 42.12, section
21(b), specifies that, when a condition of community supervision is violated, the judge
shall conduct a hearing without a jury to determine whether to continue, extend, modify,
or revoke community supervision. Even though revocation of community supervision
may result in the defendant's loss of liberty, a revocation hearing does not involve
findings of guilt; rather it is a forum in which the judge decides whether the defendant has
broken the contract he made with the court after a determination of guilt has already been
made. While the rules of evidence and procedure generally apply to revocation hearings,
evidence not normally admissible at a trial can be presented to the judge at a revocation
hearing. And, because the judge is not determining guilt, the standard of proof is lower
than in a criminal trial; the State must prove by a preponderance of the evidence that the
conditions of community supervision were violated. 

 Conversely, the cases relied upon by the court of appeals, Romero, Nethery, and
Tennard, each involved a jury trial. In Romero, we stated, "No machine or device has
perhaps caused greater controversy among 'experts', judges, lawyers, physicians,
psychologists, government officials, and the public in general than the polygraph or lie-detector machine." 493 S.W.2d at 209. Some of the underlying issues with the use of
polygraph results are: the polygraph's reliability in determining guilt, the jury's difficulty
in interpreting the results, and the tendency to treat the results as conclusive evidence of
guilt. Id. at 211. Romero suggests that polygraph results may be admissible if, among
other qualifications, the jury is instructed that such evidence is not direct evidence of
guilt, but evidence that tends only to indicate whether the subject was telling the truth at
the time of the exam. Id. at 212-13. Most of the problems usually associated with the
admissibility of polygraph exam results are not present in a community-supervision
revocation hearing. In such an administrative hearing, the polygraph results are not used
to establish guilt of the original offense, there is no jury to be confused or to overvalue
the results, and the judge is not deciding guilt. In the case before us, the judge even
acknowledged the general concerns with polygraph evidence and noted the distinction
between evidence of guilt and evidence of truthfulness when tested. The polygraphs were
not attempting to determine whether Appellant had committed the original offense to
which he had pled guilty, they were used to determine whether he was being truthful in
sex offender treatment. Strain testified that Appellant had never taken a polygraph for the
originally charged offense and that he had admitted to the offense. We continue to
support our precedent that polygraph results are inadmissible before a jury. However, the
dangers of undue influence by polygraph results are not present in a revocation hearing
such as this. We acknowledge that the problem of polygraph reliability may remain even
in a revocation hearing. However, the fact that Appellant failed five polygraph exams
before the State moved to adjudicate guilt indicates to us that the results in this case
remained consistent. 

Basis for Expert Opinion

 Even generally inadmissible facts or data may be used by an expert in forming an
opinion, as long as the facts or data are of a type reasonably relied upon by other experts
in the field. (4) As discussed above, polygraph exams are reasonably relied upon by experts
in sex offender psychotherapy. As such, Rule 703 permits Strain to rely on polygraph 
results in forming his expert opinion that Appellant should be discharged from the sex
offender treatment program.

 While Rule 703 allows experts to rely on inadmissible evidence in forming an
opinion, Rule 705 dictates whether the basis for the opinion is disclosed to the court. 

Under Rule 705(a): "The expert may testify in terms of opinion or inference and give the
expert's reasons therefor without prior disclosure of the underlying facts or data, unless
the court requires otherwise. The expert may in any event disclose on direct examination,
or be required to disclose on cross-examination, the underlying facts or data." Thus, Rule
705(a) allows Strain to disclose that the failed polygraphs were the basis for his opinion. 

Put simply, Rule 703 allows Strain to say, "I discharged the defendant because I felt that
he was being dishonest," and under Rule 705(a), he may add, "I felt he was being
dishonest because he failed the mandated polygraphs exams."

 We also note that the rest of Rule 705 is concerned with the disclosure of the facts
and data to the jury. By requiring a requested voir dire examination of an expert outside
the presence of the jury, Rule 705(b) indicates that the jury's exposure to inadmissible
evidence is one of the main concerns with allowing testimony regarding the underlying
facts or data upon which the expert's opinion is based and also indicates that the point of
voir dire is for the judge to make this decision. Subsection (c) says that an expert's
opinion may be inadmissible if the court determines that the underlying facts or data do
not provide a sufficient basis for the opinion; and subsection (d) provides for a balancing
test to determine whether the danger that the facts or data will be used for a purpose other
than as the basis for the expert's opinion outweighs the value as explanation or support,
and also says that a requested limiting instruction shall be given to the jury. 

 In a community-supervision revocation hearing, where there is no jury, polygraph 
results may be admissible as the basis for an expert opinion under Rules 703 and 705(a). 

 Finally, we have set out a hierarchy for situations in which there is a conflict
between the caselaw and our rules. Rule of Evidence 101(c) states that, in criminal cases,
"[h]ierarchical governance shall be in the following order: the Constitution of the United
States, those federal statutes that control states under the supremacy clause, the
Constitution of Texas, the Code of Criminal Procedure and the Penal Code, civil statutes,
these rules, and the common law. Where possible, inconsistency is to be removed by
reasonable construction."

 The court of appeals erred in holding that Tennard's ban on polygraph evidence
applies to expert opinions under Rules 703 and 705(a) in community-supervision
revocation hearings. 

CONCLUSION

 Because adjudication hearings are administrative proceedings, in which there is no
jury and the judge is not determining guilt of the original offense, we hold that the results
of polygraph exams are admissible in revocation hearings if such evidence qualifies as the
basis for an expert opinion under Texas Rules of Evidence 703 and 705(a). 

 The court of appeals is reversed. 


 Meyers, J.

 


Delivered: March 7, 2012

Publish 
1. Unless otherwise noted, all references to Rules refer to Texas Rules of Evidence.
2. Appellant was originally charged with aggravated sexual assault, but agreed to plead guilty to injury to a child
. He
conceded that polygraph exams were a reasonable condition of community supervision in this case. Leonard, 315
S.W.3d at 580. 
3. As noted by Appellant, polygraph exam results are also useful for police during the investigation of crimes.

4. Rule 703 states: 

 The facts or data in the particular case upon which an expert bases an opinion or inference may be
those perceived by, reviewed by, or made known to the expert at or before the hearing. If of a type
reasonably relied upon by experts in the particular field in forming opinions or inferences upon the
subject, the facts or data need not be admissible in evidence.